http://www.va.gov/vetapp16/Files4/1634326.txt

Citation Nr: 1634326 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 12-21 034 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUE

Entitlement to service connection for bilateral hearing loss disability.

REPRESENTATION

Veteran represented by: Tennessee Department of Veterans' Affairs

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Paul S. Rubin, Counsel

INTRODUCTION

The Veteran had active duty service in the United States Army from November 1972 to October 1974. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

This appeal was processed using Virtual VA and the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. 

In January 2014, the Veteran presented testimony at a Board videoconference hearing before the undersigned Veterans Law Judge. A transcript of that hearing is associated with Virtual VA. 

In November 2014, the Board remanded the appeal for further development. The case has since been returned to the Board for appellate review. 

In May 2016, the Veteran's representative submitted additional medical treatise evidence. This evidence is pertinent to the Veteran's bilateral hearing loss appeal. Notably, no waiver of RO consideration has been obtained by the VA. In any event, the benefit the Veteran seeks is fully granted in this decision. Consequently, a waiver by the Veteran of this additional pertinent medical treatise evidence is not necessary. See 38 C.F.R. §§ 20.800, 20.1304(c) (2015). 

FINDING OF FACT

The Veteran has current bilateral hearing loss disability for VA compensation purposes that is the result of hazardous noise exposure from gunfire and artillery training as a cannon crewmember in the Army from 1972 to 1974.

CONCLUSION OF LAW

Resolving all reasonable doubt in his favor, the Veteran has bilateral hearing loss disability that was incurred in active service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.385 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duty to Notify and Assist

In the decision below, the Board has granted the Veteran's claim for service connection for bilateral hearing loss disability. Therefore, the benefits sought on appeal have been granted in full. Accordingly, regardless of whether the notice and assistance requirements have been met with regard to this issue, no harm or prejudice to the Veteran has resulted. See, e.g., Bernard v. Brown, 4 Vet. App. 384 (1993); VAOPGCPREC 16-92.

II. Law and Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). In addition, disorders diagnosed after discharge may also still be service-connected if all the evidence, including pertinent service records, establishes the disorder was incurred in service. 38 C.F.R. § 3.303(d). See Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). As a general matter, service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Under 38 C.F.R. § 3.303(b), where the evidence shows an enumerated "chronic disease" in service (or within the presumptive period under § 3.307), or "continuity of symptoms" of such a disease after service, the disease shall be presumed to have been incurred in service. Walker v. Shinseki, 708 F.3d 1331, 1335-37 (Fed. Cir. 2013). In the present case, sensorineural hearing loss is an enumerated "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) would apply if sensorineural hearing loss is noted or shown in the record. Walker, 708 F.3d at 1338-39. Service connection for an enumerated "chronic disease" listed under 38 C.F.R. § 3.309(a) can also be also be established on a presumptive basis by showing that it manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 

VA is to give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. 38 U.S.C.A. § 1154(a) (West 2014). The Federal Circuit has held that medical evidence is not always or categorically required in every instance to establish a medical diagnosis or the required nexus between the claimed disability and the Veteran's military service. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of the facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2). In essence, lay testimony is competent when it regards the readily observable features or symptoms of injury or illness and "may provide sufficient support for a claim of service connection." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336-37; Layno v. Brown, 6 Vet. App. 465, 469 (1994). That is, lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson, 581 F.3d at 1316. 

Therefore, the Board must assess the competence and credibility of lay statements. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). 

In adjudicating claims for VA benefits, the burden of proof only requires an "approximate balance" of the evidence for and against a claim. 38 U.S.C.A. 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1991). This low standard of proof is "unique" to the VA adjudicatory process, and "the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding such benefits." Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) (citing Gilbert, 1 Vet. App. at 54).

The Veteran has contended that he developed bilateral hearing loss as the result of noise exposure during service. Specifically, he has asserted that he was exposed to hazardous noise as the result of his military occupational specialty (MOS) as a cannon crewmember in the United States Army from 1972 to 1974. His service records confirm that he served in this capacity. He has asserted that this MOS entailed acoustic trauma from exposure to gunfire, explosives, and 175mm Howitzer artillery. He has stated that he did not always wear hearing protection. He has denied having any post-service noise exposure. He first reported noticing hearing loss symptoms lasting only several days, subsequent to firing artillery during service. But he did not report the hearing loss at that time, as service members in his unit simply talked louder to one another to compensate. Eventually, his hearing worsened over time post-service, becoming noticeable 5-6 years after discharge in 1980. The Veteran has also emphasized that he is already service-connected for tinnitus by the VA. Thus, he has asserted that the same acoustic trauma that caused damage to his auditory system for purposes of tinnitus would have caused auditory damage leading to hearing loss as well. In substance, he has underscored that delayed onset hearing loss should exist for veterans who were exposed to significant in-service acoustic trauma. See June 2011 NOD; August 2012 VA Form 9; August 2013 and May 2016 representative statements; January 2014 videoconference testimony. 

Upon review of the evidence of record, the Board concludes that service connection for bilateral hearing loss disability is warranted. 

The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. §§ 1110, 1131; Degmetich v. Brown, 104 F.3d 1328 (1997). In the absence of proof of a current disability, there can be no valid claim. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

According to VA standards, impaired hearing will be considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

In the present case, there is clear evidence that the Veteran meets the threshold criterion for service connection of current bilateral ear hearing loss disability. Specifically, a February 2011 VA audiology examination showed pure tone thresholds, in decibels, as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
40
15
15
50
55
LEFT
25
40
60
60
25

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 94 percent in the left ear. Thus, the Veteran has current bilateral ear hearing loss for VA purposes, based on his pure tone thresholds. See 38 C.F.R. § 3.385. 

The Veteran's service treatment records (STRs) dated from 1972 to 1974 are negative for any complaint, treatment, or diagnosis of hearing loss disability under § 3.385 in either ear. That is, none of the in-service audiograms dated in September 1972 (at entrance) and September 1974 (at separation) demonstrated bilateral hearing loss disability by the standards of 38 C.F.R. § 3.385. They also fail to reveal any significant auditory shifts in the frequencies of 500 to 4000 Hertz. 

In any event, the Department of Defense's Duty MOS Noise Exposure Listing indicates that an MOS as a cannon crewmember involved a "high" probability of noise exposure during service. In-service hazardous noise exposure is therefore consistent with the circumstances of the Veteran's duties in service. See 38 U.S.C.A. 1154(a); 38 C.F.R. 3.303(a); Veterans Benefits Administration (VBA) Fast Letter No. 10-35 (September 2, 2010).

Moreover, even if no hearing loss or auditory shifts are noted in the service treatment records, an award of service connection for a hearing disability established by post-service audiometric and speech-recognition scores is not precluded, even when hearing was found to be within normal limits on audiometric and speech-recognition testing at the time of separation from service. Hensley v. Brown, 5 Vet. App. 155, 157 (1993); Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). 

That is, a claimant may establish direct service connection for a hearing disability initially manifest several years after separation from service on the basis of evidence showing that the current hearing loss is causally related to injury or disease suffered in service. Hensley, 5 Vet. App. at 164. See also 38 U.S.C.A. 1113(b); 38 C.F.R. 3.303(d). Thus, the lack of evidence of bilateral hearing loss disability per § 3.385 during active service is not fatal to the Veteran's claim; it is merely one factor to be considered. 

Post-service, the first medical evidence of hearing loss disability for VA purposes under 38 C.F.R. § 3.385 is an August 2005 private audiology evaluation. As a lay person, the Veteran reports the first post-service symptoms of hearing loss in 1979 or 1980, five to six years after separation from service. See January 2014 hearing testimony. In any event, the Veteran is competent to report symptoms of hearing loss both during and several years after his military service. Layno, 6 Vet. App. at 469. See also 38 C.F.R. § 3.159(a)(2). The Veteran's lay allegations of worsening hearing loss post-service beginning in 1979 / 1980 are also credible. See Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). 

With regard to a nexus, there is probative, circumstantial evidence of record establishing a link between the Veteran's current hearing loss disability and his confirmed hazardous noise exposure during his period of active service from 1972 to 1974. Holton, 557 F.3d at 1366. See also 38 C.F.R. § 3.303(a), (d). Specifically, the February 2011 VA audiology examiner opined the Veteran's bilateral tinnitus was as least as likely as not (50/50 probability) caused by or a result of military noise exposure. In the same opinion, the VA examiner opined that the Veteran's bilateral hearing loss was not related to his in-service noise exposure, because there was no evidence of hearing loss during service and no other evidence of significant changes in hearing thresholds suggestive of noise injury during service. In addition, a July 2015 VA audiology addendum note on Virtual VA from another VA audiologist reached a similar negative conclusion regarding the etiology of the Veteran's hearing loss. 

However, the Board agrees with the Veteran's representative that a logical inference can be drawn from the February 2011 VA audiology opinion on tinnitus in that the same acoustic trauma that caused damage to the Veteran's auditory system for purposes of tinnitus would have likely caused auditory damage leading to hearing loss as well. See August 2013 and May 2016 representative statements. The Board adds that several VA audiologists in the record commented that there was no evidence of post-service occupational noise exposure or recreational noise exposure, to account in any way for the Veteran's current sensorineural hearing loss. See November 2010 VA audiology consult; February 2011 and July 2015 VA audiology examinations and opinions. Thus, the Veteran's bilateral hearing loss disability (identified as sensorineural hearing loss) is of the type and configuration that is consistent with in-service noise exposure given the Veteran's post-service history of no documented noise exposure and the current diagnosis of recurrent tinnitus. Sensorineural hearing loss is defined as "that due to a lesion in either the cochlea (sensory mechanism of the ear), the vestibulocochlear nerve, the central neural pathways, or a combination of these structures. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 836 (31st Ed. 2007); see also 38 C.F.R. § 20.903 (b)(2) (2015) (notice to the appellant is not required if the Board uses a recognized medical treatise or medical dictionary for the limited purpose of defining a medical term and that definition is not material to the Board's disposition of the appeal).

Moreover, in May 2016 the Veteran's representative submitted medical treatise evidence titled "Noise and Military Service, Implications for Hearing Loss and Tinnitus," from The Institute of Medicine of National Academies. This study suggested "[i]t is possible however that an individual's awareness of the effects of noise on hearing may be delayed considerably after the noise exposure." Where medical article or treatise evidence, standing alone, discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion, a claimant may use such evidence to meet the requirement for a medical nexus. Wallin v. West, 11 Vet. App. 509 (1998). 

In making this favorable determination for the Veteran, the Board has considered that evidence is rarely neat and tidy. Therefore, it is expected that the Board will at times have to construct a complete narrative by filling in gaps with inferences and common sense. There is no requirement that all factual questions be resolved by reliance on direct, rather than circumstantial, evidence. The fact finding of the Board in this case is entitled to deference and is not clearly erroneous. To the extent that the Board made inferences and considered circumstantial evidence in its analysis of the evidence, this type of reasoning is well within the discretion of a fact finder. Although another fact finder may have declined to make the same inference, that does not mean that the Board in the present case is clearly erroneous. Bastien v. Shinseki, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact finder."). 

Accordingly, resolving doubt in the Veteran's favor, the evidence supports service connection for bilateral hearing loss disability, as there is competent and credible evidence of both in-service noise exposure, and post-service hearing loss disability for VA compensation purposes, with no post-service intercurrent cause. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

ORDER

Subject to the provisions governing the award of monetary benefits, service connection for bilateral hearing loss disability is granted. 

____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs